**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

J&J SPORTS PRODUCTIONS, INC.,

Plaintiff,

v.

CSG PROPERTIES, LLC, et al.,

Defendants.

Civil Action No. 18-8836 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants CSG Properties, LLC ("CSG") and Gregory Gilfoil's ("Gilfoil") (collectively, "Defendants") Motion to Dismiss. (ECF No. 10.) Plaintiff J&J Sports Productions, Inc. ("J&J" or "Plaintiff"), opposed (ECF No. 11), and Defendants replied (ECF No. 12). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

**I.    Background**[1]

J&J brings claims against CSG, a limited liability company that manages the Venice Restaurant and Bar ("Venice"), an establishment located at 31 West Cottage Street, Bayonne, New Jersey. (Compl. ¶¶ 6-7, ECF No. 1.) J&J also brings claims against Gilfoil, the managing member

---

[1] For purposes of the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). In addition, the Court writes for the parties, who are familiar with the facts and the procedural history to date. The Court, accordingly, includes only the facts necessary to resolve the decision.

and registered agent of CSG. (*Id.* ¶¶ 7-9.) The claims stem from an allegedly unlawful exhibition of a televised boxing match at Venice, specifically the Saul Alvarez versus Amir Khan WBC World Middleweight Championship Fight Program, which was telecast nationwide on May 7, 2016. (*Id.* ¶¶ 12-20.) Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint consists of conclusory allegations that fail to state a claim for relief. (Defs.' Moving Br., ECF No. 10-1.)

## II. Legal Standard

Courts will examine the legal sufficiency of a complaint and may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "contain sufficient factual matter" that "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a court must accept all factual allegations in the complaint as true, that tenet is "inapplicable to legal conclusions" and a "pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In addition, on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

## III. Discussion

Plaintiff's Complaint includes the following six counts: Violation of Title 47 U.S.C. § 605 (Count One); Violation of Title 47 U.S.C. § 553 (Count Two); Common Law Conversion (Count Three); Unlawful Interference with Prospective Economic Advantage (Count Four); Unlawful

Interference with Contractual Relations (Count Five); and Unjust Enrichment (Count Six). The Court will address each in turn.

A. **Counts One and Two—Wire Statutes**

With respect to Plaintiff's 47 U.S.C. § 605 claim, Defendants argue that the Third Circuit has constrained application of § 605 "nearly exclusively to radio transmissions." (Defs.' Moving Br. 9 (quoting *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 200 (3d Cir. 2001)).) In addition, Defendants argue that Plaintiff's § 553 claim must be dismissed because Plaintiff failed to allege facts supporting the means of theft of the communication, broadcast of the program, and to whom the broadcast was published. (Defs.' Moving Br. 10.)

According to Plaintiff, "[t]he Third Circuit has determined that 47 U.S.C. §§ 605 and 553 reach different conduct, with section 605 governing satellite (or radio) violations, and section 553 governing cable violations." (Pl.'s Opp'n Br. 9[2] (citing *TKR Cable Co.*, 267 F.3d at 207).) Plaintiff asserts that pursuant to Federal Rule of Civil Procedure 8(d)(3), the § 553 claim and § 605 claim were brought in the alternative, and that district courts within the Third Circuit have permitted plaintiffs to plead mutually exclusive alternative claims. (*Id.* at 10-12.) Additionally, Plaintiff cites case law from the Seventh Circuit supporting Plaintiff's ability to plead violations of mutually exclusive statutes. (*Id.* at 12 (citing *United States v. Norris*, 88 F.3d 462, 467 (7th Cir. 1996)).) Plaintiff also argues that it has sufficiently pled specific facts to demonstrate entitlement to relief on its statutory claims. (*Id.* at 12-13.)

In *TKR Cable Co.*, the Third Circuit explained the difference between the provisions of § 553 and § 605, and precluded the application of § 605 to the sale of decoder boxes to decrypt cable transmissions. 267 F.3d at 200. The Third Circuit cited prior history from the Seventh

---

[2] As Plaintiff's opposition brief does not contain page numbers, the Court cites the page numbers as they appear on the ECF system.

3

Circuit, highlighting the requirement that the differing provisions of the act be distinguishable, because "through the Crime Control Act, Congress removed from § 605 of the Communications Act [of 1934] the principal share of its authority over wire communications, leaving § 605 primarily with radio communications."[3] *Id.* at 200-02.

While Plaintiff correctly asserts that it may plead alternative claims, each of those claims must be discretely plausible. Here, Plaintiff has failed to plead the applicability of § 605 under Third Circuit case law. The Third Circuit has rejected Plaintiff's attempted interpretation of the statutory provisions "not only because the legislative history accompanying § 553 demonstrates that Congress drafted the provision to deter the newly emergent and previously unaddressed cable piracy, but also because TKR's reading of § 605 would effectively render § 553 superfluous." *Id.* at 204. Because the Third Circuit has found that Congress intended § 553 to apply in cases of cable piracy, and because Plaintiff does not allege in the Complaint the means of transmission of the cable broadcast, the Court finds good cause to dismiss Plaintiff's § 605 claim without prejudice. The Court denies Defendant's motion with respect to Plaintiff's § 553 claim.

**B.     Count Three—Common Law Conversion**

Defendants argue that Plaintiff's conversion claim must fail because the program is intangible property, and in New Jersey, only tangible property may be converted. (Defs.' Moving Br. 12.) Plaintiff appears to agree with Defendants' interpretation of New Jersey law, stating, "With respect to the third count, conversion, while Plaintiff disagrees with the general conclusion, this Court recently reiterated that conversion does not reach intangible property, . . . . and thus

---

[3] The Third Circuit further explained, "In short, although § 605, as originally drafted in 1934, would have reached the cable decoder box piracy perpetrated by [the defendant], the 1968 Act removed the critical language granting § 605 authority over such conduct." *Id.* at 201. The Court also examined the legislative history behind § 553, noting that Congress enacted § 553 specifically "to combat the novel phenomenon of cable piracy." *Id.* at 203.

4

Plaintiff does not challenge Defendants' argument in this regard." (Pl.'s Opp'n Br. 16 (citing *Megatel Mobile, LLC v. Tracfone Wireless, Inc.*, No. 17-3837, 2018 WL 4110928, at *2 (D.N.J. Aug. 29, 2018)).) Because Plaintiff's conversion claim relates to intangible property, the Court finds good cause to grant Defendants' motion with respect to this claim.

### C. Counts Four and Five—Unlawful Interference with Prospective Economic Advantage and Unlawful Interference with Contractual Relations

Defendants assert that the unlawful interference with prospective economic advantage and unlawful interference with contractual relations claims should be dismissed because Plaintiff failed to plead plausible facts to support these claims. (Defs.' Moving Br. 12-14.)

With respect to the tortious interference with prospective economic advantage claim, Plaintiff asserts that it has pled facts advancing the claim's elements, including that: "Plaintiff was in pursuit of a business"; "Defendants acted with malice, i.e., without justification or excuse"; Defendants profited from that exercise to Plaintiff's detriment because without Defendants' broadcast Plaintiff would have reaped a benefit from license of the Program; and Plaintiff owned the exclusive distribution rights. (Pl.'s Opp'n Br. 17.)

The Third Circuit has restated the elements of the New Jersey claim of tortious interference with a prospective or existing economic relationship as:

> (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference.

*F.D.I.C. v. Bathgate*, 27 F.3d 850, 871-72 (3d Cir. 1994) (internal quotations and citations omitted).

Defendants' argument only addresses the facts specifically pled in Count IV. Plaintiff, however, has sufficiently pled facts to sustain the claim by incorporating the facts Plaintiff pled to support the preceding Counts. Specifically, Plaintiff pled that it exclusively owned the rights to the broadcast (Compl. ¶ 20); Defendants knew that the broadcast was licensed (Compl. ¶ 23, 41); that but for Defendants' pirating scheme, Defendants would have had to license the fight from Plaintiff to show it at Venice Restaurant (Compl. ¶ 25, 43); that Defendants intentionally showed the fight at Venice Restaurant on May 7, 2016 for the purposes of financial gain (Compl. ¶¶ 13, 24); and that Plaintiff was deprived of the licensing fee Defendants otherwise would have been required to provide for access to the fight (Compl. ¶ 37). The Court, accordingly, denies Defendants' motion with respect to Count Four.

With respect to Count Five, an interference with a contractual advantage claim is "imposed upon a defendant who intentionally and improperly interferes with the plaintiff's right to a contract with another person [] (or with) the plaintiff's prospects of economic gain even where these prospects have not been reduced to a contract right." *C.R. Bard, Inc. v. Wordtronics Corp.*, 561 A.2d 694, 696 (N.J. Super. Ct. Law Div. 1989) (quotation and citation omitted). The Third Circuit has held, furthermore, that a plaintiff must "prove an additional element of tortious interference with a prospective contractual relation, namely, a sufficiently concrete prospective contractual relation." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 195 (3d Cir. 1992). New Jersey law, however, does not require that the "prospective relation be expected to be reduced to a formal, binding contract. [The relation] may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation." *Id.*

Here, Plaintiff has failed to plead a formal contract between Plaintiff and Defendants. Plaintiff, nevertheless, has sufficiently pled that Defendants obtained the fight, which was

6

broadcasted by contract (Compl. ¶¶ 46, 48), and that if Defendants had not illegally pirated the broadcast, they would have been required to obtain it from Plaintiff by contract (Compl. ¶ 24). The Court, therefore, denies Defendants' motion with respect to Count Five.

### D. Count Six—Unjust Enrichment

Defendants argue the unjust enrichment claim should be dismissed because: (1) New Jersey does not recognize unjust enrichment as a claim independent from other tort claims, and since it is tied to an impermissibly pled conversion claim, it must fail; and (2) to recover on an unjust enrichment claim, a plaintiff must show that it expected remuneration from a defendant, and Plaintiff has failed to plead facts that to support that. (Defs.' Moving Br. 14-16.) Plaintiff argues that because it seeks restitution in quasi-contract, the unjust enrichment claim should remain even if the conversion claim is extinguished because it is not an impermissibly based tort claim. (Pl.'s Opp'n Br. 17-18.)

Plaintiff's unjust enrichment claim attempts to seek restitution in quasi-contract. (Pl.'s Opp'n Br. 17-18.) Plaintiff's attempt to distinguish the impermissible tort-based unjust enrichment claim from the permissible quasi-contract based unjust enrichment claim, however, demonstrates that Plaintiff did not sufficiently plead unjust enrichment. (Compl. ¶¶ 51-54.) The Court, accordingly, grants Defendants' motion without prejudice as to Count Six and will provide Plaintiff the opportunity to file an amended complaint.

### E. Individual Claims as to Gilfoil

Defendants argue that "the [C]omplaint fails to state claims for imposing individual liability on [Gilfoil.]" (Defs.' Moving Br. 16.) Defendants assert, "Plaintiff does not allege that either CSG or [Gilfoil] are owners or principals of Venice Restaurant, but only that CSG managed and/or operated Venice Restaurant." (*Id.* at 18.) Defendants claim that Plaintiff's conclusory allegations are based solely on Gilfoil's status as an officer and member of CSG. (*Id.*) Defendants

7

also argue that there is no basis to pierce the corporate veil and pursue Gilfoil as an individual. (*Id.* at 21.) In support of their Motion to Dismiss, Defendants cite a series of cases from the Eastern District of New York. (*Id.* at 18-20.) In response, Plaintiff asserts that Defendants rely on district court cases from outside the Third Circuit. (Pl.'s Opp'n Br. 19-20.) Plaintiff also argues it pled that Gilfoil directed the activities at issue and that he had the right and authority on the night in question to do so. (*Id.* at 20.)

"Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil." *State Dep't of Envt'l Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983) (citing *Lyon v. Barrett*, 445 A.2d 1153, 1156 (N.J. 1982)). Nevertheless, "[i]t is well settled law in New Jersey and this Circuit that a corporate officer can be held individually liable for his or her intentional torts without the need to pierce the corporate veil." *Kare Distrib., Inc. v. Jam Labels & Cards LLC*, No. 09-969, 2009 WL 3297555, at *7 (D.N.J. Oct. 9, 2009) (citations omitted); *see Minerva Marine, Inc. v. Spiliotes*, No. 02-2517, 2006 WL 680988, at *5 (D.N.J. Mar. 13, 2006) (citations omitted).

In New Jersey, the "essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort." *Reliance Ins. Co. v. The Lott Grp., Inc.*, 851 A.2d 766, 777 (N.J. Super. Ct. App. Div. 2004). Under the participation theory, a corporate officer or director may be held personally liable for participation in the corporation's wrongdoing, even if he or she derived no personal benefit. *Id.* "The individual's act of participating is significant, the motivation is not." *Id.* According to the New Jersey Supreme Court, "[a] predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 272 (N.J. 2002). The Court explained:

> It is well settled by the great weight of authority in this country that the officers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation. The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested.

*Id.* at 273.

Because Plaintiff has failed to plead independent facts to support piercing the corporate veil on the statutory claims, and because Plaintiff has failed to plead sufficient facts to sustain individual liability beyond bare allegations that Gilfoil directed the action, the Court finds good cause to dismiss Plaintiff's § 553 claim (Count Two) without prejudice as to Gilfoil. The Court will provide Plaintiff the opportunity to amend. The Court denies Defendants' motion as to the surviving intentional torts, unlawful interference with economic advantage (Count Four) and unlawful interference with contractual relations (Count Five).

**IV.     Conclusion**

For the reasons set forth above, the Court: (1) grants Defendants' Motion to Dismiss the § 605 claim (Count One); (2) denies Defendants' Motion to Dismiss the § 553 claim (Count Two); (3) grants Defendants' Motion to Dismiss the Common Law Conversion claim (Count Three); (4) denies Defendants' Motion to Dismiss the Unlawful Interference with Prospective Economic Advantage claim (Count Four); (5) denies Defendants' Motion to Dismiss the Unlawful Interference with Contractual Relations claim (Count Five); and (6) grants Defendants' Motion to Dismiss the Unjust Enrichment claim (Count Six). With respect to the individual claims against

Gilfoil, the Court: (1) grants Defendants' motion to dismiss the § 553 claim; and (2) denies Defendants' motion to dismiss the remaining intentional tort claims.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

<u>Dated:</u>  March 31, 2019